UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **KENNETH L. WALLER**<br>     **LA. DOC #26395**<br>**VS.** | **CIVIL ACTION NO. 3:16-CV-1168**<br><br>**SECTION P**<br><br>**JUDGE ROBERT G. JAMES** |
| **JERRY WARD, ET AL** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

Pro se plaintiff Kenneth L. Waller, proceeding in forma pauperis, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on August 10, 2016. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections (DOC). He is incarcerated at the Claiborne Parish Detention Center (CPDC), Homer, Louisiana, but his complaints arise out of his time incarcerated at the Union Parish Detention Center (UPDC). Specifically, he complains of conditions of confinement, that he was denied mental health care, that there was no classification board or grievance procedure, that he was deprived of his personal property and denied access to the court. Plaintiff sued Jerry Ward, the Warden at UPDC, Donnie Adams, Chief of Security at UPDC, and Ms. James, social worker, seeking compensatory damages and access to the law library. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

*Statement of the Case*

Plaintiff, Kenneth L. Waller, is a pre-trial detainee currently confined at the Claiborne Parish Detention Center, Homer, Louisiana. He filed suit while confined at the Union Parish

Detention Center, Farmerville, Louisiana. Plaintiff asserts that defendants Jerry Ward, UPDC Warden, Donnie Adams, Chief of Security at UPDC and Ms. James, social worker violated his constitutional rights.

First, he asserts that he was denied mental health care/treatment and counseling. [Rec. Doc. 1, p.4] Specifically, Ms. James, social worker, denied his request to get back on medication he had previously been taking, as well as see a licensed mental health counselor, specialist or psychiatrist, despite being told that he was hearing voices that told him to hurt people and later, in fact, struck someone with a 2x4 board. [Rec. Doc. 4-2, p. 3]

Next, plaintiff complains that UPDC should be condemned due to its deplorable condition, i.e., the cell lights do not work, there is no hot water in the cell sinks, the sinks, toilets and roofs leak, the facility is infested with bedbugs, roaches and rodents and there are dangerous items in the dorms that inmates could use as weapons. *Id.* He never saw an exterminator at the facility and being subjected to bedbugs was cruel and unusual punishment.

Furthermore, plaintiff asserts that his rights were violated as there was no classification board or administrative remedy procedure or grievance process for pre-trial detainees. *Id.* Moreover, defendants deprived him of his personal property after inmates stole a phone card, postage stamps, batteries and cigarettes out of his cell. *Id.*

Finally, he asserts that he was denied access to the courts and law library and material and supplies to correspond with the courts. Moreover, he complains that the law library at UPDC was inadequately equipped with outdated books and no access to online materials such as Westlaw.com or LexisNexis. *Id.*

***Law and Analysis***

*1. Screening*

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (per curiam). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

*2. Medical Care*

Plaintiff complains that the defendants, specifically Ms. James, the social worker, violated constitutional rights when they denied his request to see a psychiatrist and receive medication for his schizo-defect/schizophrenia, anxiety, depression and anti-social personality disorder. [Rec. Doc. 1, p. 4]

The constitutional rights of a convicted state prisoner spring from the Eighth Amendment's prohibition on cruel and unusual punishment, *see Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285,

291, 50 L.Ed.2d 251 (1976), and, with a relatively limited reach, from substantive due process. The constitutional rights of a pretrial detainee, on the other hand, flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Significantly, *Bell* instructs that the State must distinguish between pretrial detainees and convicted felons in one crucial respect: The State cannot punish a pretrial detainee. Id. at 535, 99 S.Ct. at 1872 ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee."). Since the State does punish convicted prisoners, but cannot punish pretrial detainees, a pretrial detainee's due process rights are said to be "at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983).

Plaintiff's complaint that he was being treated by a social worker instead of a psychiatrist for his mental health care amounts to a disagreement with the course of his medical treatment. *See Brown v. Day,* 1999 WL 1220762, at *5 (E.D. La., Dec. 16, 1999)*.* Plaintiff's disagreement with the course of medical treatment he received does not state a claim that the defendants were deliberately indifferent to his medical needs. *Brown, supra (citing Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997). To the contrary, he admits receiving treatment from the social worker, yet disagrees with her decision not to refer him to a specialist/psychiatrist. Accordingly, plaintiff has failed to allege a violation of a clearly established right under currently applicable constitutional law.

*4. Conditions of Confinement*

It is clear that "the Fourteenth Amendment prohibits the imposition of conditions of confinement on

pretrial detainees that constitute punishment." *Smith v. Gusman,* 2015 WL 2066517 (*citing Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir.2004) (internal quotation marks omitted). Nevertheless, the jurisprudence recognizes that the judiciary is ill equipped to micro-manage a jail's day-to-day operations, and federal courts are therefore loath to intervene when detainees complain of mere inconveniences. Further, such judicial restraint is appropriate because the federal constitution simply is not concerned with a de minimis level of imposition on pretrial detainees. *Id. (citing Bell v. Wolfish*, 441 U.S. 520, 539 n. 21 (1979)); *Ruiz v. El Paso Processing Center*, 299 Fed. App'x 369, 371 (5th Cir.2008)). As explained below, it is apparent that plaintiff's numerous complaints regarding the conditions of his confinement concerned inconveniences which did not constitute "punishment" or otherwise rise to the level of constitutional violations.

Plaintiff argues that the UPDC was generally in poor condition, specifically noting that the lights in the cells do not work and that there were items in the cells that inmates could use as weapons. [Rec. Doc. 1, p.5] However, he has presented no evidence whatsoever that those conditions resulted from a punitive motive, rather than from mere negligence. *See Smith, supra*. Further, the conditions themselves, while lamentable, were not inherently unconstitutional. *Id. (citing Lee v. Hennigan*, 98 Fed. App'x 286 (5th Cir.2004) (rejecting a claim that defendants violated an inmates "constitutional rights by maintaining unsafe shower facilities," noting that problem did not result from a punitive intent and that "[t]he fact that a detention interfered with a prisoner's desire to live as comfortably as possible does not convert the conditions of confinement into punishment")).

Plaintiff also complained that the facility was "infested with bedbugs, roaches and rodents" and that he "had never seen the pest control come exterminate/spray..." [Rec. Doc. 1, p.5] However, the mere presence of pests does not amount to a constitutional violation. *See, e.g., Simmon*s v.

*Gusman*, 2015 WL 151113 , at *4 (E.D. La., Jan. 12, 2015); *Clark v. Gusman*, Civ. Action No. 11–2673, 2012 WL 1825306, at *5 (E.D.La. Mar. 29, 2012), adopted, 2012 WL 1825302 (E.D.La. May 18, 2012); *Murray v. Edwards County Sheriff's Department*, 453 F.Supp.2d 1280, 1292 (D.Kan.2006), aff'd, 248 Fed. App'x 993 (10th Cir.2007); *Smith v. Barber*, 316 F.Supp.2d 992, 1028–29 (D.Kan.2004).

Plaintiff next complained of various plumbing problems. For example, he alleged that, there was no hot water in the cell sinks, and that the sinks, toilets and roofs leak. [Rec. Doc. 1, p.5] While such plumbing problems are undoubtedly annoying, they are not actionable under federal law because the Constitution does not protect inmates from those types of "life's occasional inconveniences." *Simmons* at *5 (citing *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir.1982); *Maddox*, 2015 WL 1274081, at *4; *Scott v. Gusman,* Civ. Action No. 10–2706, 2011 WL 666851, at *7 (E.D.La. Feb. 14, 2011); *Rue v. Gusman*, Civ. Action No. 09–6480, 2010 WL 1930936, at *5 (E.D.La. May 11, 2010). Inmates simply have no constitutional right to hot water. *Smith v. Gusman, supra*, at *3 (*citing Mann v. Smith*, 796 F.2d 79, 85 (5th Cir.1986); *Johnson v. Desoto County Sheriff Department*, Civ. Action No. 13cv43, 2013 WL 3944284, at *2 (N.D.Miss. July 31, 2013)). Furthermore,"leaks, while unpleasant, are not unconstitutional." *Id.* (*citing Bean v. Pittman*, Civ. Action No. 14–2210, 2015 WL 350284, at *4 (E.D.La. Jan. 26, 2015); *accord Davies v. Fuselier*, No. 00–30554, 2001 WL 360709, at *3 (5th Cir. Mar. 15, 2001); *Simmons v. Gusman*, Civ Action No. 14–1907, 2015 WL 151113, at *5 (E.D.La. Jan. 12, 2015); *McAllister v. Strain*, Civ. Action No. 09–2824, 2009 WL 5088752 (E.D.La. Dec. 23, 2009)). Accordingly, these allegations fall short of what is required to state a cognizable §1983 claim.

### 5. *No Classification Board or Administrative Remedy Procedure/Grievance Process*

Plaintiff asserts that his constitutional rights were violated because UPDC had no classification board and mentally ill inmates and misdemeanor offenders were housed with felony offenders. [Rec. Doc. 1, p.5] Plaintiff has failed to state a claim, as inmates have no protectable property or liberty interest in custodial classification. *Epps v. Epps*, 108 Fed.Appx. 150 (5th Cir. 2004).

Further, to the extent that plaintiff claims that the prison's grievance system is inadequate, such a claim does not allege a Constitutional violation. *Compare Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005) (Prisoners do not have a federally protected liberty interest in having their grievances resolved to their satisfaction; any alleged due process violation arising from the alleged failure to investigate prisoner grievances is indisputably meritless); (see also *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) (Burger, C.J., concurring) (applauding the institution of grievance procedures by prisons but not suggesting that such procedures are constitutionally required); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("[T]he constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (quotation omitted) (holding that a prison grievance procedure is not a substantive right and "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991 *(per curiam)* (concluding regulations providing for administrative remedy procedure do not create liberty interests in access to that

procedure); and *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) ("There is no legitimate claim of entitlement to a grievance procedure."). As such, this allegation fails to state a claim upon which relief can be granted.

### 6. *Deprivation of Personal Property*

Plaintiff alleges that after an altercation, he was escorted out of his cell, at which time other inmates stole his personal property, including a phone card, postage stamps, batteries and cigarettes. [Rec. Doc. 1, p. 5] In *Parratt v. Taylor*, 451 U.S. 527, 544, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), a prisoner claimed that prison officials had negligently deprived him of his personal property without due process of law. The Supreme Court held that the prisoner was "deprived" of his property within the meaning of the Due Process Clause of the Fourteenth Amendment, but the Court ruled that the State's post-deprivation tort remedy provided all the process that was due. *Id.,* 451 U.S. at 536-37, 101 S.Ct. at 1913.

The Due Process Clause does not embrace tort law concepts. Although a litigant may be afforded a remedy under state tort law for deprivation of property, the Fourteenth Amendment does not afford such a remedy. *Daniels v. Williams,* 474 U.S. 327, 335, 106 S.Ct. 662, 667, 88 L.Ed.2d 662 (1986). Even in instances where intentional deprivation occurs where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated, so long as the deprivation was "random." *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995); *Murphy v. Collins*, 26 F.3d 541 (5th Cir. 1994).

This principle (known as the *Parratt/Hudson* doctrine) rests on the premise that because the state is unable to predict random and unauthorized conduct, pre-deprivation remedies are unfeasible. *Davis*, 70 F.3d at 375, citing, *Zinermon v. Burch*, 494 U.S. 113, 128-32, 110 S.Ct. 975, 985-86, 1098

L.Ed.2d 100 (1990) (distinguishing between random unauthorized conduct and a deprivation which results from predictable conduct authorized by a State). Louisiana tort law provides Plaintiff the opportunity to seek redress for his loss, whether intentional or negligent. *Lee v. Driskel*, 2016 WL 4623284, *4 (W.D. La., Aug. 12, 2016); *see also* La. Civ. Code art. 2315. Accordingly, Plaintiff has failed to state a claim cognizable under Section 1983.

7.   ***Access to Legal Materials***

Finally, plaintiff claims that he was denied access to unspecified legal materials at UPDC. According to his complaint, he was denied access to the courts, law library and to material and supplies to correspond with the courts. [Rec. Doc. 1, pp. 5-6] He also claims that the law library was inadequately equipped with outdated materials and inmates were not provided with online research materials, such as Westlaw and LexisNeix. *Id.* at p.6

The right of access to the courts assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights. *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996); *Norton v. Dimazana*, 122 F.3d 286, 289 (5th Cir.1997).

However, prison officials have considerable discretion in choosing the mechanism and forms of assistance they will furnish to prisoners for the purpose of allowing prisoners to file non-frivolous legal claims. See *Lewis v. Casey*, 518 U.S. at 356, 116 S.Ct. at 2182, ("Of course, we leave it to prison officials to determine how best to ensure that inmates... have a reasonably adequate opportunity to file non-frivolous legal claims challenging their convictions or conditions of confinement.")

Plaintiff's allegations, construed liberally and all taken as true for the purposes of this review,

9

fail to demonstrate that the defendants denied him access to the courts as that term is defined in the foregoing cited jurisprudence. The Supreme Court has not extended the right to access the courts to encompass any more than the ability of an inmate to prepare and transmit a necessary legal document to a court. *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993). *See also Lewis v. Casey*, 518 U.S. at 349-355, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996). Clearly, plaintiff has not been denied that right. The record demonstrates that he has filed numerous pleadings with this court [See Rec. Docs. 1, 8, 9, 10, 11, 12] Accordingly, the record does not demonstrate that plaintiff has been denied a right to seek relief in the courts.

Further, even assuming that plaintiff would be able to demonstrate that the defendant somehow deprived him of his constitutional right to access the courts, he must still allege facts to establish that he suffered some prejudice as a result of the deprivation. That requirement has long been established by Supreme Court and Fifth Circuit jurisprudence. See *Lewis v. Casey*, 518 U.S. at 350-355, 116 S.Ct. at 2179- 81; *Eason v. Thaler*, 73 F.3d at 1328; *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993); *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir.1992), *cert. denied*, 504 U.S. 988, 112 S.Ct. 2974, 119 L.Ed.2d 593 (1992); and *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir.1988). In *Lewis v. Casey*, the Court noted that its prior access to courts jurisprudence "...did not create an abstract, freestanding right to a law library or legal assistance...", and that "...an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense..."

Plaintiff has wholly failed to allege any <u>specific</u> facts establishing that he was <u>actually prejudiced</u> in connection with any pending or contemplated legal proceeding by any alleged act or

omission by any of the named defendants herein. Because plaintiff has presented no fact-specific allegations establishing that he was ever actually prejudiced in connection with any actual or proposed legal proceeding, his claims do not provide a basis for recovery under § 1983. Plaintiff has not shown that the actions of the defendants inhibited him from filing a non-frivolous complaint. His access to court claim, is itself frivolous, and dismissal on that basis is appropriate.

*Conclusion and Recommendation*

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**


In Chambers, Monroe, Louisiana, October 19, 2016.

_____
**KAREN L. HAYES**
**UNITED STATES MAGISTRATE JUDGE**